v. Catherine Engelbrecht What this is becoming is a challenge to 230. Georgia law allows you to submit an eligibility challenge that is countless, there is no limit, and the county boards of elections to evaluate that. 11B does not allow you to directly reach out to the voter in any way to discourage them from voting and intimidating. Thank you very much, Judge. I'd like to start out with the individual voters, just to fill in some of the details that opposing counsel left out when describing their intimidation. We talked about Ms. Jocelyn Heredia and how the district court found that Ms. Heredia's challenge was reasonable. He did not mention that there was a blatant factual error in that analysis. In other words, the district court was confusing Ms. Heredia's moves after the loss of Hibbenthal post-2020 and not considering her residency at the time of the challenge. In fact, earlier in the same opinion on page 14, the district court acknowledged that Ms. Heredia graduated from the University of Georgia in 2019 and got an internship in December 2019. So there's no way she could have lived in Atlanta for three years before that. And it wasn't until 2020 that she moved to Atlanta. So the district court even recognized that she didn't have all these moves before the challenge. It just confused her moves that post-dated the challenge. And that is an error that True to Vote does not even challenge in their brief. They do not even contest that that was a plain error. And that was just an oversight. And even if it was not an oversight, True to Vote was not aware of Ms. Heredia's individual circumstances when it filed its challenge. The only information it had was that there was a change of address, a national change of address database. And based on that, it lobbed 250,000-plus challenges, which were patently frivolous, as the district court identified. The district court says that there's no evidence in the record of the percentage of those challenges that were unsuccessful. Is he right? He is correct. There is no evidence of the percentage that were unsuccessful. That would be a massive undertaking to try to figure out of all the 250,000 challenges. I'll tell you what it is evident. No one presented any evidence in the record of a single meritorious challenge. In other words, a single challenge that should have been brought or that was permissible or that was not frivolous or patently incorrect. All the evidence in the record consists of challenges that were flawed, that were wrong, that were frivolous. Heredia is an exception to that, no? Heredia is absolutely not an exception to that. As I mentioned before, the district court's findings on Heredia moving around was mistaken because the district court was actually thinking about her moves post-2020, after the lawsuit had been filed and after the challenge. In fact, as the district court even acknowledged earlier in the opinion, she had not moved around. She had just graduated from university. So that was a blatant error. But she was allowed to vote in any event, right? She was allowed to vote, correct, after spending four hours trying to prove her identity and prove her residency. But it's important to understand that even though she was allowed to vote, this is what she testified to and what this challenge did to her. She said she felt like she was committing a crime, and she asked, are they questioning whether I'm a citizen? Now, bear in mind, Ms. Heredia was born and raised in Georgia, but that's immediately where her mind went when she was challenged. Are they questioning whether I, who was born and raised in Georgia, am a citizen? That is where these challenges took her. You know what's worse? Ms. Heredia has not voted since. So notwithstanding the fact that there's not a single scrap of evidence in the record that shows that any one of these challenges was meritorious, this has still prevented Ms. Heredia, born and raised in Georgia, qualified voter, has still prevented her from voting. And she's not the only one. That's why we have trials. And there was a trial, right? And the judge found against you on that. So it's going to be very difficult, isn't it, just to reverse and to say what? Do it again? Well, that brings us back to the legal error on attempt that we've been discussing. And I want to circle back to a couple of points on this specific legal error. First, opposing counsel seems to also be conflating attempt with the substantive claim. It is reasonable to think of the attempt prong of Section 11B to require intent and a substantial step. But what does that intent mean? That intent has already been defined. That intent has been defined as the natural consequences of their actions. So, in other words, players do not need to prove that Trudevalt specifically intended or subjectively intended to intimidate. They need to prove that the natural consequences of their actions was intimidation. And we know that because the House Committee on the Judiciary issued a report in which it stated that defendants are presumed to intend the natural consequences of their actions. The natural consequence of the mass challenge is intimidation, is preventing people from voting. Even if that were not the standard, even if subjective intent was the standard, there is plenty of evidence of that subjective intent, including, one, the multitude of individuals who told Trudevalt beforehand that their challenges were frivolous and they should not file them, including the deputy, including the general counsel of the Secretary of State's office, including their own volunteer. Trudevalt's own volunteer said there are problems with the challenge list, problems with your information. There are lawful voters being swept up. Expert testimony that the challenge lists were disastrously flawed. A tweet from Trudevalt and its affiliates threatening to release the names of all these challenged individuals if the county boards of elections did not act. That is all evidence, and that is all evidence that's unrefuted. The district court just simply lacked the legal framework to see that evidence for what it was. And that evidence, again, ties back to instances of reasonable intimidation. Georgia has a sordid history of issuing bounties for intimidation, has a sordid history of mass challenges, not just of mass challenges, but as Dr. Burton testified, of mass challenges that are created by preparing these templates, these pre-filled without even checking the details, without even having any personal knowledge and just sending them out to the county boards. Georgia has a history of those sordid attempts to intimidate voters. Dr. Burton testified that this is what happened in 1944 when candidates attempted to intimidate 15,000 to 25,000 black voters. History is repeating itself. This is the exact same procedure that Trudevalt followed. It created a template and sent it around to people to fill in. You're basically challenging Section 230. How else do you have to allow mass challenges? Mass challenges are always going to have a big net that has, and that's why you have the local boards, right? This discussion of the constitutionality of Section 230 that opposing counsel mentioned just simply veers off track for a couple of reasons. One, it really doesn't matter what Section 230 says because we are enforcing Federal law, and Federal law is supreme. So whether 230 permits or does not permit these mass challenges, a violation of Section 11B can still be enforced regardless of what State law permits. And we know that because Federal courts, including the former Fifth Circuit, the former Fifth Circuit, which is binding on this Court, have enforced Section 11B challenges even when individuals have taken actions that were expressly permitted under State law. And that's true in U.S. v. Wood, U.S. v. Beattie. These are cases from the 1960s in which individuals or police officers issued citations to individuals who had incorrect writing on their license plates, for instance. That was U.S. v. McLeod in Alabama, right? Even though these citations were permissible, even though these citations were correct in some instances, that does not prevent a Section 11B violation. But putting that aside, it's not the fact of a massive challenge that makes this a violation of Section 11B. It is the totality of the circumstances, the mass challenge, the threats of issuing or publicizing the names of voters, the fact that these challenges were frivolous, the fact that they were never intended to be legitimate challenges to begin with because, as opposing counsel mentioned, the timing of them just wouldn't even allow them to be considered anyway. This was not a legitimate attempt to get anyone's, to adjudicate anyone's qualifications. This was a stunt in order to intimidate voters. And you're well over your time, so I'll give you 30 more seconds to wrap up. Certainly. The last thing that I want to mention and make clear here is that our argument and the legal errors we identify, this is no criticism of the district court per se because there is just not a lot of case law in this area. As you notice, a lot of the cases I've cited too have come from the 60s when the Voting Rights Act, the Section 11B was being enforced and the Civil Rights Act was being enforced. But there is, there are interpretive clues that I've identified and all of which point in the same direction, that this type of activity can be voter intimidation and is certainly an attempt at voter intimidation. And we ask the Court to clarify the standards of Section 11B and to identify the standards and the path for the district courts to follow and to provide that guidance so that litigants can follow this in the future and to reverse the district court's ruling to allow for a more robust analysis under the appropriate standards. Thank you, Your Honor. Thank you very much. It's been helpful. We're in recess for today. All rise.